| | |
|---|---|
| MARIO EVANS, | ) |
| | ) |
| Movant, | ) |
| | ) |
| vs. | ) |
| | )    Case No. 1:05CV00099 ERW |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court upon *pro se* Movant Mario Evans' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [doc. #1], filed on June 16, 2005. The Government filed its Response [doc. #8] on August 29, 2005, requesting this Court deny Movant's motion without an evidentiary hearing. Petitioner filed a traverse [doc. #9] on September 22, 2005.

## I.    BACKGROUND FACTS

On April 26, 2004, Movant entered a guilty plea to a two-count indictment. The two counts charged Petitioner with the crime of distributing five or more grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (2000)[1] and punishable under 21 U.S.C. § 841(b)(1)(B) (2000)[2].

The Plea Agreement and Stipulation of Facts states that as charged in Count I, Movant

---

[1] 21 U.S.C. § 841(a)(1) states: "[I]t shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]"

[2] Under 21 U.S.C. § 841(b)(1)(B), a violation involving five or more grams of cocaine base is punishable by imprisonment from five to forty years.

knowingly and intentionally sold 5.4 grams of cocaine base to Trooper J.R. Holcomb ("Holcomb") of the Missouri State Highway Patrol on November 5, 2002. As charged in Count II, he sold 5.8 grams of cocaine base to Holcomb on December 2, 2002.

The Plea Agreement recommended a base level offense of 26 under U.S.S.G. § 2D1.1. The Plea Agreement also recommended a full three-level decrease if Movant accepted responsibility for his conduct under Section 3E1.1 of the Sentencing Guidelines. The parties recommended a total offense level of 23. According to the Plea Agreement, Movant agreed to waive all rights to contest the conviction or sentence in any post conviction proceeding, including a motion under § 2255, but reserved the right to appeal on grounds of ineffective assistance of counsel at the time of sentencing.

On July 27, 2004, Movant was sentenced to 100 months imprisonment for each of the two counts, to be served concurrently, followed by supervised release for four years. No direct appeal was filed. The present Motion under § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody was filed with the Court on June 16, 2005[3], alleging the following four grounds for appeal:

**Ground One:** I was denied a direct appeal throught [sic] my attorney ineffective[4]

---

[3] "A 1-year period of limitation shall apply to a motion under [§ 2255]." 28 U.S.C. § 2255. "[T]he one-year time limit for filling § 2255 motions is a statute of limitation and not a jurisdictional bar." *Moore v. United States of America*, 173 F.3d 1131, 1134 (8th Cir. 1999). "The limitation period shall run from . . . (1) the date on which the judgment of conviction becomes final". 28 U.S.C. § 2255 (1). Movant entered a guilty plea on April 26, 2004, and was sentenced on July 27, 2004. Movant had ten days to file a notice of appeal after the sentencing date. The present Motion, filed on June 16, 2005, is within the 1-year limitation period pursuant to § 2255.

[4] "[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

**Ground Two:** Actually Innocent

**Ground Three:** Invalid Plea Agreement

**Ground Four:** Defendant was denied Due Process

The Court concludes that Movant's Motion cannot be conclusively determined based on the Motion, files and records in the case. Therefore, an evidentiary hearing for this Motion will be conducted on the issue of whether Movant requested his counsel to file an appeal under Ground One. *See Shaw v. United States,* 24 F.3d 1040,1043 (8th Cir. 1994). Accordingly, the Court will grant in part Movant's Motion for an evidentiary hearing. For the reasons set forth below, the Court concludes that each of the remaining Grounds is without merit, and those portions of Movant's Motion will be dismissed.

## II.     STANDARD OF REVIEW: RELIEF UNDER 28 U.S.C. § 2255

A federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Accordingly, a § 2255 motion may be based upon violations of the Fifth and Sixth Amendments.

## III.     ANALYSIS

## A.     GROUND ONE: Ineffective Assistance of Counsel

Here, Movant claims ineffective assistance of counsel at the sentencing phase of the criminal proceeding. However, in making his plea agreement, Movant waived certain rights to appeal or attack his conviction. The first issue is whether Movant's waiver of rights in the Plea Agreement precludes him from making a collateral attack under § 2255. The Plea Agreement, Guidelines,

Recommendations and Stipulations Relative to Sentencing reads as follows:

> The defendant further agrees to waive all rights to contest the conviction or sentence, in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, **except for claims of prosecutorial misconduct or ineffective assistance of counsel at the time of sentencing**. (emphasis supplied).

Negotiated waivers of appellate rights and rights to pursue post-conviction relief have been upheld by the Eighth Circuit. *See United States v. Morrison*, 171 F.3d 567, 568 (8th Cir. 1999); *United States v. Michelsen*, 141 F.3d 867, 873 (8th Cir. 1998); *United States v. His Law*, 85 F.3d 379, 379 (8th Cir. 1996); *United States v. Rutan*, 956 F.2d 827, 829 (8th Cir. 1992). Waivers of collateral attack rights, including those under § 2255, are similarly upheld. *DeRoo v. United States,* 223 F.3d at 923.

It is well-settled that a defendant may affirmatively waive particular constitutional rights. *See Boykin v. Alabama*, 395 U.S. 238, 243 (1969) (right to a jury trial, to confront and cross-examine witnesses, and to the Fifth Amendment privilege against self-incrimination); *Faretta v. California*, 422 U.S. 806, 836 (1975) (right to counsel). Specifically, plea bargaining is not unconstitutional even though it waives important constitutional rights. *Newton v. Rumery*, 480 U.S. 386, 393 (1987).

The right to appeal is merely a statutory right, not a constitutional right. *Abney v. United States*, 431 U.S. 651, 656 (1977). If defendants can waive fundamental constitutional rights, they are not precluded from waiving procedural rights granted by statute. *Rutan*, 956 F.2d at 829 (citing *United States v. Wiggins*, 905 F.2d 51 (4th Cir. 1990)). Thus, a defendant may waive certain procedural appellate rights. *Id*. Accordingly, a defendant who pleads guilty and expressly waives the statutory right to raise objections to a sentence may not then seek to appeal the very sentence which itself was part of the agreement. *Id*.

The Eighth Circuit has determined that a waiver of a right to appeal is enforceable if the waiver is knowingly and voluntarily made, and the sentence imposed is in accordance with the negotiated agreement. *Rutan*, 956 F.2d at 829. However, such waivers are not absolute. For example, the Eighth Circuit has determined that defendants cannot waive their right to appeal an illegal sentence, which is a sentence imposed in violation of the terms of an agreement. *DeRoo*, 223 F.3d at 923. In addition, "the decision to be bound by the provisions of the plea agreement, including the waiver provisions, must be knowing and voluntary." *Id.* (citing *Morrison*, 171 F.3d at 568). Even when these conditions are met, however, a waiver will not be enforced where to do so would result in a miscarriage of justice. *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003).

The Eighth Circuit has held that the illegal sentence exception to the general enforceability of an appeal waiver is an extremely narrow exception. *Id.* at 891. Any sentence imposed within the statutory range is not subject to appeal. Specifically, an allegation that the sentencing judge misapplied the Sentencing Guidelines or abused his or her discretion is not subject to appeal in the face of a valid appeal waiver." *Id.* at 892. A sentence is illegal when it is not authorized by the judgment of conviction or when it is greater or less than the permissible statutory penalty for the crime. *Id.* (citing *United States v. Greatwalker*, 285 F.3d 727, 729 (8th Cir. 2002)).

Here, the waiver clearly allows Movant to make an ineffective assistance of counsel claim in a § 2255 motion for defects at the time of sentencing. However, because a guilty plea has been entered, the focus of a collateral attack under § 2255 is limited to the nature of counsel's advice and the voluntariness of the plea. *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984) (citing *Tollett v. Henderson*, 411 U.S. 258, 266 (1973)).

The Court must determine whether Movant's § 2255 states a valid claim for ineffective

assistance of counsel. As stated above, a § 2255 motion may be based upon a violation of the Sixth Amendment right to effective assistance of counsel. The United States Supreme Court has held that a showing of ineffective assistance of counsel requires that: (1) counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"; and (2) "counsel's deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Auman v. United States*, 67 F.3d 157, 162 (8th Cir. 1995). The test articulated in *Strickland* applies to guilty plea challenges premised upon allegations of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To prove the first prong of the test, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. When evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Even if sufficient proof of the first prong exists, relief may only be obtained if a petitioner also proves that counsel's deficient performance prejudiced the case. *Id.* at 697. In order to satisfy the second prong, i.e., the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The court may address the two prongs in any order, and if the petitioner fails to make a sufficient showing of one prong, the court need not address the other prong. *Strickland*, 466 U.S. at 697; *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000) (holding that "[i]f we can answer 'no' to either question, then we need not address the other part of the test.").

Movant asserts that he received ineffective assistance of counsel at the sentencing stage because his attorney: (1) failed to object to the presentence report; (2) failed to object to the drug

weight; and (3) failed to file a notice of appeal after being instructed by Movant to do so.

### 1. Failure to Object to Presentence Report

Movant argues that his attorney was ineffective by failing to object to the presentence report. This Court holds that Movant's counsel was not ineffective for failing to object to the presentence report because Movant cannot show any facts that demonstrate his attorney was deficient by not objecting to the presentence report. Counsel is never obligated to perform meaningless acts. *See Woodall v. U.S.*, 72 F.3d 77, 80 (8th Cir. 1995). The terms of the Presentence Report completed by the Probation Officer mirror the recommendations in the Plea Agreement signed by Movant. Not only did Movant's counsel not object to the Report, Movant failed to respond that he had any "lawful cause or reason to assign to the Court as to why the judgment of the Court" could not "be pronounced" upon him. Furthermore, when the Court gave Movant an additional opportunity to speak, he said nothing. Therefore, Movant did not receive ineffective assistance of counsel with regard to the presentence report.

### 2. Failure to Object to the Drug Weight

Movant next asserts that his attorney was ineffective for failing to object to the drug weight. This Court holds that Movant's counsel was not ineffective for failing to object to the drug weight. According to the Plea Agreement, Movant agreed to be held responsible for at least 5 grams, but less than 20 grams of cocaine base. Further, during Movant's change of plea hearing, the Assistant United States Attorney read into the record the Indictment and all of the facts relating to the Counts charged in the Indictment that the Government believed it could prove if the case had gone to trial.

> THE COURT: I'm going to ask Mr. Ferrell to state or read into the record facts he believes he could prove if called upon to do so at a trial of your case. The purpose of this is to see if there's a factual basis upoin which a conclusion of your

guilt might rest.  When he's finished, if you believe he misstates any facts, I'll
expect you to correct the record.  You may proceed.

MR. FERRELL: If it please the Court, Your Honor, the Government would
establish that on or about November the 5th, 2002, in Mississippi County, the
Defendant sold to Trooper J.R. Holcomb of the Missouri State Highway Patrol a
quantity of a form of cocaine base known as crack cocaine in exchange for $300.
This substance was analyzed by a forensic chemist for the federal Drug
Enforcement Administration and determined to be 5.4 grams of cocaine base.  As
to Count II, the Government would establish that on the 2nd day of December,
2002, in Mississippi County, the Defendant again sold to Trooper J.R. Holcomb
of the Missouri State Highway Patrol a quantity of a form of cocaine base known
as crack cocaine in exchange for $320.  This substance was also analyzed by the
Drug Enforcement Administration's North Central Laboratory and determined to
be 5.8 grams of cocaine base.

COURT: Do you have any disagreement with any of those facts?

DEFENDANT: No, sir.

Movant indicated that he understood the charges and indicated that no threats or promises were made

to him in exchange for his change of plea.  Certainly, the allegation that his attorney should have

objected to the drug amount is inconsistent with Movant's agreement that he was responsible for at

least 5 grams of cocaine base.

### 3. Failure to File Notice of Appeal

Third, Movant argues that his attorney's  failure to file a timely notice of appeal resulted in

Movant losing the right to challenge on direct appeal.  According to Movant, had his attorney filed

a notice of appeal, he could have pursued a claim that the sentencing court violated the dictates of

*Booker* and *Blakely* at the sentencing phase.

An attorney's failure to file a notice of appeal after being instructed to do so by his client

constitutes ineffective assistance entitling the petitioner to § 2255 relief.  No inquiry into prejudice

or likely success on appeal is  necessary.  *See Holloway v. United States*, 960 F.2d 1348, 1356-57

(8th Cir. 1992).[5]  "The appropriate remedy is to remand for re-sentencing, thus affording the petitioner an opportunity to take a timely direct appeal." *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000).

For such a claim to succeed, however, Movant must show that he instructed his counsel to file an appeal.  *See Holloway*, 960 F.2d at 1357.  It is well established that, for an indigent defendant, the "right to be furnished counsel [for appeal] does not depend upon a request, but the desire to appeal must be manifest." *See, e.g.*, *Maness v. Swenson*, 385 F.2d 943, 945 (8th Cir. 1967) (quoting *Swenson v. Bosler*, 386 U.S. 258, 260 (1967)).  "A bare assertion by the petitioner that []he made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." *Barger,* 204 F.3d at 1182; *see also Rodriguez v. United States*, 964 F.2d 840, 842 (8th Cir. 1992) (per curiam).

Movant's filings offer no sworn factual statement for his bare assertion that he requested an appeal.  The sole basis for assuming that Movant wanted an appeal is a statement made in a memorandum supporting his § 2255 motion; however, that memorandum omits mention of the circumstances surrounding his desire for an appeal.  The critical question, then, is whether Movant specifically asked his lawyer to file a notice of appeal.  If Movant did ask for an appeal, his lawyer violated his Sixth Amendment rights by failing to complete the "ministerial task" of filing a notice of appeal. *See Flores-Ortega*, 528 U.S. at 477.

For the above reasons, Ground One is denied as to all claims except Movant's allegations that

---

[5] In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the United States Supreme Court explained that in those cases in which an attorney has consulted with the defendant about an appeal, counsel "performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."

his attorney failed to file a notice of appeal. The Court will hold an evidentiary hearing to determine the facts relating to the alleged failure to file a notice of appeal on the part of Movant's counsel.

**B.      GROUND TWO: Actual Innocence**

Movant claims that he is actually innocent because to be guilty of counts one and two, the Government must prove beyond a reasonable doubt that the Movant did in fact distribute ten or more grams of cocaine base. Movant asserts that a lab report created by the Government's own expert witness reveals that the actual cocaine base was 2.4 grams. Movant did not pursue a direct appeal to the Eight Circuit and therefore did not raise any of the current claims on direct appeal. If a claim could have been raised on direct appeal, but was not, it cannot be raised in a § 2255 motion unless Movant can show both (1) a "cause" that excuses the default, and (2) "actual prejudice" resulting from the errors of which he complains. *See United States v. Frady*, 456 U.S. 152, 168 (1982); *Schneider v. United States*, 981 F.2d 989, 990 (8th Cir. 1992). If Movant is unable to show "cause" and "actual prejudice," he must make a "substantial claim that constitutional error has caused the conviction of an innocent person." *Schlup v. Delo*, 513 U.S. 298, 321 (1995). A claim of actual innocence must be based on "new evidence," and must convince the court that "it is more likely than not that no reasonable juror would have found Movant guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 321.

Movant has not shown cause and actual prejudice to excuse his failure to raise his claims on direct appeal. *See Frady*, 456 U.S. at 168. Moreover, Movant has not presented any new evidence tending to establish that he is actually innocent of the crimes to which he pled guilty and was sentenced. Movant's sole argument for actual innocence is that a lab report created by the Government's expert witness reveals that the net weight of the substance was 5.4 grams and 5.8

grams, respectively, but that the actual weight of the cocaine base was 2.3 grams and 2.4 grams, respectively. Thus, he cannot be guilty of violating 21 U.S.C. § 841(a)(1). This argument fails because it is in contravention of the plain language of the statute: "5 grams or more of a *mixture* or *substance*. . . which contains cocaine base." 21 U.S.C. § 841(b)(1)(B)(iii) (emphasis added). Accordingly, Ground Two is denied.

## C. GROUND THREE: Invalidity of Plea Agreement

Next, Movant claims that the plea agreement is invalid because the plea was unintelligently and involuntarily made. Movant asserts that neither he nor his counsel correctly understood the nature of the charges against him. As stated above, Movant made no challenge to the plea agreement on direct appeal. Movant argues that the plea agreement states the net weight of the substance, rather than the actual weight.

"A plea of guilty is constitutionally valid only to the extent it is "voluntary" and "intelligent." *Brady v. United States*, 397 U.S. 742, 748 (1970). A "plea of guilty entered by one fully aware of the direct consequences" of the plea is voluntary in a constitutional sense "unless induced by threats . . . , misrepresentation . . . , or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business." *Id*. at 755. A plea is intelligent when the defendant is advised by competent counsel, was in control of his mental faculties, and "was made aware of the nature of the charge against him." *Id*. at 756. Furthermore, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998). However, if a defendant has procedurally defaulted his claim by failing to raise it on direct review, the claim may be raised in habeas if he can demonstrate "cause" or "actual prejudice". *Id*. at 622.

Movant makes no allegations of threats or misrepresentation. Moreover, Movant was advised by competent counsel, was in control of his mental faculties, and was made aware of the charges against him. Indeed, in the plea colloquy, Movant acknowledged that no person had made any promises, representations, or assurances to him and no person had made any threats against him in an effort to secure a guilty plea. Movant also stated that he had ample time to read the plea agreement, that he understood all of the terms, and that he was completely satisfied with the services of his attorney. Thus, Movant's plea was voluntary and intelligent. For these reasons, Ground Three is denied.

**D.      GROUND FOUR: Due Process.**

Movant claims that his sentence was based upon uncharged facts not found by a jury beyond a reasonable doubt. Movant made no challenge to the indictment on direct appeal, and, as noted above, he waived the right to file a direct appeal. He now alleges that the indictment charged him with an incorrect amount of cocaine base, and he was entitled to have a jury determine, beyond a reasonable doubt, the specific amount attributable to him.

First, Movant is incorrect that the indictment charged him with an incorrect amount of cocaine base. The indictment charged that Movant "knowingly and intentionally distribute[d] five grams or more of cocaine base." Regardless of the amount stated in the indictment, the amount of cocaine base that Movant was ultimately held responsible for was the result of a joint recommendation made by both the Movant and the Government in the Plea Agreement. The Plea Agreement indicates that the parties agreed that when the Court determined Petitioner's offense level, the parties recommended "[t]hat the quantity of cocaine base for which the defendant is

12

responsible, including relevant conduct, is at least 5 grams but less than 20 grams, and the base level under U.S.S.G. § 2D1.1 is 26."

Second, Movant waived any right to appeal the judicial determination of facts relevant to the Sentencing Guidelines. According to the Plea Agreement:

> the defendant and the Government hereby waive all rights to appeal all non-jurisdictional issues including, but not limited to: any issues relating to pre-trial motions, hearings and discovery; any issues relating to the negotiation, taking or acceptance of the guilty plea or the factual basis for the plea, and whatever sentence is imposed; any issues relating to the establishment of the Total Offense Level or Criminal History Category determined by the Court, except that the parties reserve the right to appeal from any Chapter 5 upward or downward departure from the Guidelines range if such departure is not agreed to in this document. The parties understand that the District Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document. The Guidelines range will be determined by the District Court and shall not be subject to appeal.

Here, Movant's sentence was within the agreed upon limits under the Plea Agreement. Therefore, Movant waived any right to appeal the determination of the amount of drugs for which Movant was found responsible, as this factual determination relates to the establishment of the Guideline range. As the Court found earlier under Ground One, this waiver is valid because it was knowingly and voluntarily made, and the sentence was imposed in accordance with the negotiated agreement. *United States v. Aronja-Inda*, 422 F.3d 734, 737-38 (8th Cir. 2005); *Andis*, 333 F.3d at 889-91.

A § 2255 motion is not a substitute for direct appeal; it is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States,* 417 U.S. 333, 343 (1974). Petitioners may not obtain § 2255 relief for "unopposed errors to which no contemporaneous objection was made" unless they can show both cause and prejudice. *United*

*States v. Wilson,* 997 F. 2d 432, 429, 431 (8th Cir. 1993) (internal citation omitted). Here, Movant made no contemporaneous objection to the judicial determination of the amount of cocaine base Movant distributed. Moreover, Movant can show neither cause nor prejudice as to issues herein that should have been presented on direct appeal. Irrespective of Movant's waiver of appellate rights, the Court will otherwise address his arguments.

Movant relies on several recent United States Supreme Court decisions, arguing that they require the jury determination of facts relevant to the Sentencing Guidelines. In light of this argument, the Court will address the failure of Movant's Motion under an analysis of applicability of United States Supreme Court cases before and since Movant's sentencing hearing.

The United States Supreme Court, since the case of *Almendarez-Torres v. United States,* 523 U.S. 224 (1998) (Breyer), has repeatedly addressed issues relating to due process protection as it relates to a defendant's right to have certain issues decided by a jury, rather than a judge, along with the exceptions to be applied. The Court will attempt to briefly recognize the series of cases and make conclusions as to their individual applicability to Movant's action.

*Apprendi v. New Jersey,* 530 U.S. 466 (2000) (Stevens) involved a state statute classifying possession of a firearm for an unlawful purpose as a "second-Degree" offense which was punishable by imprisonment for "between five years and 10 years." A separate "hate-crime" statute provided for an extended term of between 10 and 20 years if the trial judge finds that the "defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." The Court concluded that the Due Process Clause of the Fourteenth Amendment requires that a

factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury with proof beyond a reasonable doubt. However, the Court recognized that "nothing in this history suggests that it is impermissible for judges to exercise discretion - taking into consideration various factors relating both to offense and offender - in imposing a judgment *within the range* prescribed by statute." Then, the Court cited the now famous words, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362,2363.

Apprendi was obviously decided before Movant entered a guilty plea or was sentenced. Though Movant confessed to be responsible for at least 5 grams but less than 20 grams of cocaine base under Counts 1 and 2, this, as Movant claims, was not submitted to a jury for deliberation. As stated above, however, Movant admitted to distributing the amount of drugs for which he was ultimately held responsible in the Plea Agreement. *Apprendi* did not proscribe a district court's responsibility in making decisions pertaining to sentencing under the United States Sentencing Guidelines.

*Ring v. Arizona,* 536 U.S. 584 (2002) (Ginsburg) overruled *Walton v. Arizona,* 497 U.S. 639 in deciding that a trial judge sitting alone could not decide the presence or absence of aggravating factors following a jury adjudication of defendant's guilt for imposition of the death penalty, for such conduct would violate a defendant's Sixth Amendment right to a jury trial in capital prosecutions. "Capital defendants, no less than noncapital defendants, we conclude, are entitled to a jury determination of any fact on which the legislature conditions an increase in their

maximum punishment." *Id.* at 2432. The Court concluded that based solely on the verdict

finding Ring guilty of first-degree felony murder, the maximum punishment he could have

received was life imprisonment, because in Arizona, a death sentence may not legally be imposed

unless at least one aggravating factor is found to exist beyond a reasonable doubt. The Court

found that such a factor could not be decided by a judge. "Because Arizona's enumerated

aggravating factors operate as the functional equivalent of an element of a greater offense...the

Sixth Amendment requires that they be found by a jury." *Id.* at 2443. The recidivism issue was

not proscribed in the opinion. This case is referenced to reflect its place in the line of cases that

have restricted judicial factfinding.

Perhaps no opinion in recent times has caused as much sudden-impact discussion among

members of the bar practicing criminal law, trial judges and appellate judges as *Blakely v.*

*Washington,* 542 U.S. 296 (2004) (Scalia). Blakely pleaded guilty in state court, where

sentencing guidelines had been adopted, to the offense of kidnaping his estranged wife. The facts

admitted in his plea, standing alone, supported a maximum sentence of 53 months. The

sentencing judge imposed an "exceptional" sentence of 90 months concluding that Blakely had

acted with "deliberate cruelty." The Supreme Court found a Sixth Amendment violation of

Blakely's right to a trial by jury. Under the Washington State Sentencing Reform Act, Blakely's

offense of Second-degree kidnapping with a firearm had a "standard range"of 49 to 53 months. A

judge could impose a sentence above the standard range if he or she found "substantial and

compelling reasons justifying an exceptional sentence." The Court analyzed the facts pursuant to

the *Apprendi* approach and found that the rule did not prevent a defendant from waiving his

*Apprendi* rights. "When a defendant pleads guilty, the State is free to seek judicial sentence

enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." *Id.* at 310. Any retroactive application of *Apprendi* would not help Movant, because he stipulated to the amount of drugs for which he was held responsible.

Finally, *United States v. Booker,* 543 U.S. 220 (2005) (Stevens, Breyer) concludes that the United States Sentencing Guidelines, as mandatorily applied, violate the Sixth Amendment. Booker was charged with possession with intent to distribute at least 50 grams of cocaine base. The jury was advised that he had 92.5 grams of cocaine base in his duffel bag, and found him guilty of violating 21 U.S.C. 841 (a)(1), which prescribes a minimum sentence of 10 years in prison and a maximum sentence of life for that offense. § 841 (b)(1)(A)(iii). Considering Booker's criminal history and the quantity of drugs found by the jury, the United States Sentencing Guidelines required the district judge to select a base offense level of not less than 210 months nor more than 262 months. After conducting a post-trial hearing the sentencing judge concluded by a "preponderance of the evidence" that Booker had possessed an additional 566 grams of crack and that he was guilty of obstructing justice, which findings mandated a sentencing range of between 360 months and life imprisonment.

Respondent Fanfan, whose case was consolidated with Booker on appeal, was charged with conspiracy to distribute and possess, with intent to distribute, at least 500 grams of cocaine in violation of 21 U.S.C. § 841 (a)(1) and 841 (b)(1) (B)(ii). A jury found him guilty, answering yes to the question of whether the amount of the cocaine exceeded 500 grams. Without additional findings his maximum sentence would have been 78 months.

Relying upon the recently decided *Blakely* opinion, the trial judge in *Fanfan* found

additional facts that defendant was responsible for 2.5 kilograms of cocaine powder and 261.6

grams of crack. The judge found by a preponderance of the evidence that Fanfan was an

organizer, leader, manager, or supervisor in the criminal activity which findings required

enhancements of 15 or 16 years instead of the 5 or 6 years authorized by the jury. The judge

concluded that he could not, under *Blakely,* sentence the defendant beyond the findings of the

jury. The Government appealed. Justice Stevens, delivering the opinion of the Court, in part,

reaffirmed *Apprendi.* Justice Breyer*, delivering the opinion of the Court, in part, concluded that

the Sixth Amendment requirement that the jury must find certain sentencing facts was inconsistent

with the Federal Sentencing Reform Act, and that "18 U.S.C. § 3553(b)(1) (Supp. 2004) [is]

incompatible with today's constitutional holding. We conclude that this provision must be

severed and excised, as must one other statutory section, §3742 (e) (Main ed. and Supp. 2004),

which depends upon the Guidelines' mandatory nature. So modified, the Federal Sentencing Act,

see Sentencing Reform Act of 1984, as amended,18 U.S.C. § 3551 *et seq., 28 U.S.C. § 991 et

seq.* makes the Guidelines effectively advisory. *Booker* requires a sentencing court to consider

Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but it permits the court to tailor

the sentence in light of other statutory concerns as well, see § 3553 (a)(4). *Id.* at 756, 757. A

standard of judicial review of "unreasonableness" was adopted. Cases on direct review fell under

the umbrella of the ruling, and the ruling was otherwise not retroactively applied. There is no

provision in *Booker* providing for retroactive review for post-conviction remedies. Movant

contends that his Sixth Amendment rights were violated when the Court made factual

determinations regarding drug quantity, thereby increasing his sentence. However, Movant's

argument rests on the erroneous assumption that *Blakely*, as applied to federal sentencings in

*Booker*, is retroactively applicable to cases on collateral review. This Court has concluded repeatedly that *Booker* is not retroactively applicable to cases on collateral review. *See Never Misses a Shot v. United States*, 413 F.3d 781 (8th Cir. 2005) (holding that *Booker* is not retroactively applicable to cases on collateral review); *United States v. Hernandez*, 436 F.3d 851, 855 (8th Cir. 2006) (same).

The *Blakely* Court reserved decision about the status of the federal sentencing guidelines. 542 U.S. at 305. However, the Supreme Court's subsequent decision in *United States v. Booker* applied the analysis of *Blakely* to the federal sentencing guidelines. 543 U.S. at 267-68 (holding that the federal sentencing guidelines are subject to jury trial requirements of the Sixth Amendment, and the provisions of the Federal Sentencing Act which make the guidelines mandatory are unconstitutional). Because it was *Booker*, not *Blakely*, that applied to the federal sentencing guidelines, the Court's new rule became effective for federal sentencing on January 12, 2005, the day *Booker* was decided. *Never Misses a Shot*, 413 F.3d 781.

The *Booker* Majority did not address whether its new rule applied retroactively to cases on collateral review, however, the reasoning in the Supreme Court's decision in *Schriro v. Summerlin,* 542 U.S. 348 (2004) is applicable here. *Summerlin* held that the Court's new rule in *Ring* was not retroactively applied to cases on collateral review. *Id*. (citing *Ring,* 536 U.S. at 609). *Ring* held that a defendant is entitled to a jury trial on all aggravating factors that may lead to the imposition of capital punishment. 536 U.S. at 609. *Ring* and *Booker* both relied heavily on *Apprendi*, 530 U.S. at 490, which held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to

a jury and proved beyond reasonable doubt.  In *Summerlin*, the Court concluded that *Ring* cannot be treated as a new substantive rule because it did not "alter[] the range of conduct or the class of persons that the law punishes."  542 U.S. at 353.  The Court noted that "*Ring* altered the range of permissible methods for determining whether a defendant's conduct is punishable [in a particular way], requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules." *Id*.

Like *Ring*, *Booker* affects only the procedural issues of the identity of the fact finder and the quantity of evidence required to pass sentence, and does not alter the substance of what primary conduct is unlawful.  Although the federal sentencing guidelines are no longer mandatory, district judges must continue to consult them when fashioning sentences. *Booker*, 543 U.S. at 264.  No "conduct" has been made lawful, and none of the many factors that affect sentences under the Sentencing Guidelines has been declared invalid. Consequently *Booker,* like *Apprendi* and *Ring,* must be treated as a procedural decision for the purposes of retroactivity analysis.

A procedural decision may be applied retroactively if it establishes one of those rare "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding."  *Summerlin,* 542 U.S. at 355.  The Court held in *DeStefano v. Woods* that fundamental fairness is not called into question when deciding between the judge or jury as fact-finder. 392 U.S. 631, 634 (1968).  In *Summerlin,* the Court again addressed this issue noting that it is not clear which fact-finder is more accurate.  542 U.S. at 355.  In addition, the end result of *Booker* neither moves any decision from judge to jury, nor changes the burden of persuasion. *Booker* held that decisions about sentencing factors will continue to be made by judges so long as

the guideline system is flexible in its application. 543 U.S. at 264-65. This minor modification to the sentencing procedure does not constitute a "watershed" change that fundamentally improves the fairness or accuracy of the criminal process. *See Summerlin,* 542 U.S. at 355. Because *Booker* provides a new procedural rule that does not rise to the level of a "watershed" change, it is not retroactively applicable to cases on collateral review. *See Never Misses a Shot*, 413 F.3d 781. While Movant's argument would collapse under a *Booker* challenge, such analysis is unnecessary because the Movant's sentence precedes the Supreme Court's *Booker* opinion, and *Booker* cannot be retroactively applied. Movant was sentenced on July 27, 2004, and *Booker* was not decided until January 12, 2005, the Movant's case is not subject to a *Booker* challenge.

Even if *Booker* were retroactively applied to a collateral proceeding, the admission exception carved out in *Blakely* prohibits Movant from obtaining relief. "When a defendant pleads guilty, the [Government] is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." *Blakely*, 542 U.S. at 310. Here, Movant contends that the drug quantity were judicially determined. Unlike *Booker*, where judicially-determined facts were used to increase the defendant's sentence without his consent, here Movant stipulated to the facts relevant in determining the length of his sentence. In the Plea Agreement, the parties agreed that Movant would be held responsible for at least 5 grams but less than 20 grams of cocaine base. Additionally, at the change of plea hearing, "the parties agree[d] to recommend that the defendant receive a sentence of 100 months, on each count, to run concurrently." Thus, the *Blakely* admission exception also precludes the application of *Booker* in this case.

Because Movant stipulated to the amount of drugs in the Plea Agreement, waived his right to make collateral attacks on his sentence under § 2255, and his argument relies on the erroneous assumption that *Blakely* is applicable retroactively, his Sixth Amendment argument is without merit.

For the above reasons, Ground Four is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Movant Mario Evans' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [doc. #1] is **GRANTED in part and DENIED in part**. The Court will hold an evidentiary hearing to determine the facts relating to the alleged failure to file a notice of appeal on the part of Movant's counsel as raised in Ground One. The remaining claims in Ground One are dismissed. Ground Two, Three and Four are dismissed.

**IT IS FURTHER ORDERED** that the presence and participation of Mario Evans, Inmate #30082-044, is required for the evidentiary hearing which will be held before this Court on July 24, 2006, at 9:00 a.m.

**IT IS FURTHER ORDERED** that the United States Marshal Service shall transport Defendant Mario Evans, Inmate #30082-044, from the Federal Medical Center in **Lexington, Kentucky** to the U.S. District Court in **Cape Girardeau, Missouri** to attend this hearing.

**IT IS HEREBY ORDERED** that **Stephen E. Walsh, Moore and Walsh, L.L.P., 433 N. Main Street, P.O. Box 610, Poplar Bluff, MO 63901, phone 573-785-6200, fax**

**573-785-4100**, is appointed to represent Petitioner in this matter. The Clerk of the Court shall provide plaintiff's newly appointed counsel with copies of any requested documents in the court file at no cost.

**IT IS FURTHER ORDERED** that the Court shall not issue a certificate of appealability as to any of the dismissed claims raised in Movant's § 2255 Motion.

Dated this <u>8th</u> day of May, 2006.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE