UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| MARIO EVANS, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | Case No. 1:05CV00099 ERW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court upon *pro se* Movant Mario Evans' Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [doc. #1], filed June 16, 2005. The Government filed its Response [doc. #8] on August 29, 2005, requesting this Court deny Movant's motion without an evidentiary hearing. Petitioner's Traverse [doc. #9] was filed September 22, 2005. This Court entered its Memorandum and Order denying all of Movant's claims, except for the argument under Ground One, which alleged that his counsel failed to file a Notice of Appeal after being instructed by Movant to do so. The Court concluded that this point could not be ruled without an Evidentiary Hearing, where the Court could hear testimony from his counsel and from Movant. An Evidentiary Hearing was conducted on August 18, 2006. After considering the pleadings, the briefs and the evidence in this case, the Court will deny all Grounds and each part of each Ground of Movant's Motion for relief under 28 U.S.C. § 2255.

## I. BACKGROUND FACTS

The Court incorporates by this reference its May 8, 2006 Memorandum and Order in this case. Here, only a brief summary of facts are required to rule the remaining argument under Ground One.

Movant's "Plea Agreement, Guidelines Recommendations and Stipulations" was signed by him and is dated April 26, 2004. That section of the Agreement pertaining to waiver of appellate rights states:

> B. Waiver of Post-Conviction Rights:
>
> (1) Appeal: The defendant has been fully apprised by defense counsel of the defendant's right to appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742. However, in the event the Court accepts the plea and sentences the defendant accordingly, as part of this agreement, both the defendant and the government hereby waive all rights to appeal all non-jurisdictional issues including, but not limited to: any issues relating to pre-trial motions, hearings and discovery; any issues relating to the negotiation, taking or acceptance of the guilty plea or the factual basis for the plea, and whatever sentence is imposed; any issues relating to the establishment of the Total Offense Level or Criminal History Category determined by the Court, except that the parties reserve the right to appeal from any Chapter 5 upward or downward departure from the Guidelines range if such departure is not agreed to in this document. The parties understand that the District Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document. The Guidelines range will be determined by the District Court and shall not be subject to appeal.
>
> (2) Habeas Corpus: The defendant acknowledges being guilty of the crime(s) to which a plea is being entered, and further states that neither defense counsel nor the government have made representations which are not included in this document as to the sentence to be imposed. The defendant further agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel at the time of sentencing.

(Plea Agreement of 4-26-04 p. 2-3).

Movant had no objections to the statement of facts the Assistant United States Attorney said he could prove if called to the task at a trial. The Change of Plea Hearing transcript records the following statement:

> MR. FERRELL: If it please the Court, Your Honor, the Government would establish that on or about November the 5th, 2002, in Mississippi County, the Defendant sold to Trooper J.R. Holcomb of the Missouri State Highway Patrol a quantity of a form of cocaine base known as crack cocaine in exchange for $300. This substance was analyzed by a forensic chemist for the federal Drug Enforcement Administration and determined to be 5.4 grams of cocaine base.

As to Count II, the Government would establish that on the 2nd day of December, 2002, in Mississippi County, the Defendant again sold to Trooper J.R. Holcomb of the Missouri State Highway Patrol a quantity of a form of cocaine base known as crack cocaine in exchange for $320. This substance was also analyzed by the Drug Enforcement Administration's North Central Laboratory and determined to be 5.8 grams of cocaine base.

Q. (By the Court) Do you have any disagreement with any of those facts?
A. No sir.

(Plea Tr. p. 11, l. 6-24).

The statement of facts adopted by Movant in the plea agreement is even more specific:

STIPULATION OF FACTS RELEVANT TO SENTENCING

The defendant acknowledges that each and every fact alleged in the Indictment is true and correct, and that defendant committed the acts alleged in the in the Indictment. The parties stipulate and agree that the facts in this care are as follows and that the government would prove these facts beyond a reasonable doubt:

On or about November 5, 2002, in Mississippi County, Missouri, the defendant sold to Trooper J.R. Holcomb, of the Missouri State Highway Patrol, a quantity of a form of cocaine base known as “crack” cocaine in exchange for $300.

This substance was analyzed by a forensic chemist for the Drug Enforcement Administration’s North Central Laboratory and determined to be 5.4 grams of cocaine base.

On or about December 2, 2002, in Mississippi County, Missouri, the defendant sold to Trooper J.R. Holcomb, of the Missouri State Highway Patrol, a quantity of a form of cocaine base known as “crack” cocaine in exchange for $320.

This substance was analyzed by a forensic chemist for the Drug Enforcement Administration’s North Central Laboratory and determined to be 5.8 grams of cocaine base.

The defendant and the Government agree that the fact set forth above are true and may be considered ad “relevant conduct” pursuant to Section 1B1.3. In accordance with U.S.S.G. Section 6B1.4(d) the Court is not bound by this Stipulation of Facts, but may with the aid of the Presentence Report, determine the facts relevant to sentencing.

(Plea Agreement of 4-26-04 p. 9).

Movant gave an oath to tell the truth at the Change of Plea Hearing. He said he had a conflict of interest with his former court appointed counsel, but that he was entirely satisfied with the services of Grant Shostak who represented him as subsequent appointed counsel at the

Change of Plea Hearing and at the Sentencing Hearing. It was agreed at the Change of Plea Hearing his sentence would be no greater than 100 months. The Government withdrew the information which provided for an enhanced sentence with a mandatory minimum sentence of 120 months. At the Change of Plea Hearing, the Court spoke to Movant as follows:

> By signing this agreement, you have waived a number of your appellate rights. You still have a right to challenge any -- by appeal -- any sentence I would make if I should try to sentence you upwardly out of the United States Sentencing Guideline range. In addition, this provision provides -- this agreement provides that you waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one under Title 28 United States Code § 2255 except you do have the right to appeal based upon prosecutorial misconduct or ineffective assistance of counsel at the time of sentencing. Other than these reserved rights of appeal, all of your other appellate rights are waived by signing this agreement. Do you understand that?

(Plea Tr. p. 18, l. 23 - p. 19, l. 10).

At the Sentencing Hearing on July 27, 2004, the Assistant United States Attorney outlined the parties' agreed sentence, his counsel spoke, and after the Court advised Movant that he could speak, he declined:

> MR. FERRELL: Your Honor, pursuant to the plea agreement that was entered in to this case, the parties agreed to the application of the Guidelines. We also agreed to make a specific recommendation of 100 months, and that is the agreement of the parties, and the Government makes that recommendation at this time.
>
> THE COURT: Mr. Shostak.
>
> MR. SHOSTAK: Judge, while, certainly, I would like to ask for a lesser time, we did agree to recommend 100 months to the Court.
>
> THE COURT: This is your opportunity. If you care to make a statement, Mr. Evans, I'll hear you now, sir.
>
> THE DEFENDANT: No, sir.

(Sent. Tr. p. 4, l. 12-24).

At the Evidentiary Hearing, Movant he testified that he knew the sentence he would receive was going to be 100 months.

Q. Okay. Now when you went to the sentencing hearing, you were fully

aware that the sentence that was going to be recommended by both your attorney and the Government attorney was 100 months. Is that correct?

A. Yes, Ma'am.

Q. And at that hearing you were given an opportunity by Judge Webber to say something to the Court, if you so desired, about the sentence that was about to be imposed on you, correct?

A. Yes, Ma'am.

Q. And do you recall what your response was?

A. I didn't have nothing to say at the time.

Q. Okay. So you didn't state anything to the Judge, correct?

A. No, Ma'am.

(Evid. Hrg. Tr. p. 28, l. 18 - p. 29, l. 7).

At the Change of Plea Hearing and at the Evidentiary Hearing, Movant was represented by a very competent lawyer. At the Evidentiary Hearing on August 18, 2006, Mr. Grant Shostak, Movant's trial attorney testified that he had been a practicing lawyer for ten years. He confirmed that he and the Assistant United States Attorney, Larry Ferrell, had negotiated and agreed that in return for Movant's plea of guilty, Mr. Ferrell would withdraw the 21 U.S.C. § 851 enhancement which would require Movant to face a 120-month mandatory minimum sentence, and Mr. Ferrell and Movant would agree to imposition of a 100-month sentence. (Sentencing Tr. p.5, l. 6-16). He was aware of the then recent *Blakely* case, decided by the United States Supreme Court, and had concluded that it had no application to Movant's case. He testified, "[t]here wern't any facts in dispute that would have affected that sentence." (Sentencing Tr. p.5, l. 21 - p. 6, l. 7).

Mr. Shostak is very specific and very believable in testifying about the key issue to be resolved on the third argument of Ground One.

Q. Now following the sentencing hearing, did Mr. Evans ask you to file a Notice of Appeal?

A. No.

Q. And did you have any discussion with Mr. Evans regarding appellate rights he may have had as a result of representing him in the case 1:04CR00021?

A. Yes. We discussed - - Obviously, we discussed the *Blakely* case and potential issues. We also discussed a right to appeal, but given the

situation at his plea agreement, that we had Mr. Ferrell's agreement to withdraw the enhancement, he decided against filing a Notice of Appeal because we didn't want to breach or be in possible breach of the plea agreement and then subject himself to the minimum ten-year sentence.

Q. Now, Mr. Shostak, in the event Mr. Evans had requested that you file a Notice of Appeal, would you have filed it?
A. Yes.
Q. And what would that require if you filed a Notice of Appeal in his case?
A. Basically I would have filled out a form for Notice of Appeal, and I believe at that time I could have filed it electronically, just would have been a simple task to do it, or would have taken it here to the District Court and filed it.
Q. Okay. Did Mr. Evans make contact with you after the sentencing hearing on April 26th or - - I'm sorry - - July 27th, 2004?
A. I don't remember him doing that. It's possible that he did.
Q. Okay. Is there any record in your file at your office which would indicate he made any contact with your office?
A. I don't have anything in my file.
Q. And, again, based on your reviewing your file and looking back over the course of your representation of Mr. Evans, did he ask you at any time to file a Notice of Appeal in this case?
A. No.

At most, according to his testimony, Movant asked Mr. Shostak if he could appeal. The following testimony of Movant is reported in the transcript:

Q. Okay. At that time did you talk about anything dealing with the past? The plea or any of these issues we talked about at sentencing?
A. No, sir.
Q. Okay. Before the sentencing, did you talk to him about setting aside the plea and/or appealing it?
A. While Mr. Webber was reading my sentence, I whispered in his ear. I asked him, "Can you appeal? Can you appeal the -- Get me a downward departure or something?" I just, you know -- I ain't -- Because I ain't really know too much about sentences in federal. This is my first time.
Q. Now for the record, when you say you whispered in his ear, you didn't whisper in the Judge's ear, did you?
A. No.
Q. All right. You whispered in your lawyer's ear?
A. Right.
Q. And you were standing side by side, I take it?
A. Yes.
Q. All right. And you asked him if he could appeal or do something to get you less than 100 months?
A. Yes.
Q. You thought that was unduly harsh?

A. Yes, sir.
Q. Okay. And what did he say at that point?
A. He said, "Yeah, right. I'll be back there to talk to you in a minute."
Q. Okay. All right. Then the Judge sentenced you to 100 months. Did you talk then about him coming back to the holding area there in the Cape Federal Building?
A. Yes, sir.
Q. All right. So you were escorted back to the Cape -- the holding cell there, just off -- across the hall from the courtroom. And did Mr. Shostak come back to talk to you?
A. No, sir.
Q. Okay. Did you after the sentencing and the week after the sentencing call his office?
A. Yes, sir.
Q. All right. Just like you had before?
A. Yes, sir.
Q. All right. And what -- what happened when you called and told him who you were?
A. I could never get through.
Q. Okay. Your collect call was not accepted?
A. Not at all.
Q. All right. And that first week, how many times did you call his office?
A. I would say all together it would be -- before I left, I called him about five -- about five or more times.
Q. All right. And what time period are we talking about here? Two weeks? Three weeks?
A. The next day for real. And then ---
Q. You called him the next day after sentencing, and then over the next few weeks you called him four or five times?
A. Yes, sir.
Q. All right. Were any of your calls accepted by his office?
A. No, sir.
Q. Before sentencing, you called, you said, two or three times. Were all of your calls accepted by his office?
A. Not all of them, but I guess because he wasn't in the office at the time.
Q. Okay. All right. Did you announce who you were when you called after sentencing? Who you were on the phone?
A. Yes, sir.

(Evid. Hrg. Tr. p. 21, l. 7 - p. 23, l. 20).

Movant did not try to contact Mr. Shostak by letter. In that regard he testified:

Q. So in your attempt to, as you've testified, your attempts to let Mr. Shostak know that you wanted to file a Notice of Appeal in this case involved a few phone calls

where you were not patched through or you weren't -- no one at Mr. Shostak's office spoke to you. Is that your testimony?

A. At the end of the sentence, right before the end of the sentence, I asked Mr. Shostak could he file an appeal; could I get a downward departure or something. And he said, "Yeah, right. I'll be back there to talk to you in a minute."

Q. Okay. So other than that, you attempted to contact his office or so it is your testimony that you attempted to contact his office --

A. Yes, Ma'am.

Q. -- but you were never successful?

A. Yes, Ma'am.

Q. Did you ever try to write him a letter?

A. No, Ma'am. When I got to the federal penitentiary, I didn't put his phone number on my list, and I was trying to contact him there to see had he filed an appeal for me, but I could never get through.

Q. Okay. So did you consider writing him a letter immediately following sentencing when you were having a problem getting through to his office?

A. Yes, I wrote him a letter, and that's -- but that's when I was in the act of filing my 2255 because I needed some documents from his file.

Q. That was at a later date. But in this case, in this instance in regard to your desire to file a Notice of Appeal or at least this is what you're telling the Court today, you never attempted to write him a letter in order to ask him to file a Notice of Appeal on your behalf?

A. I thought he -- I thought he was going to do it anyway, though, you know. I thought because I had asked him after I had been sentenced to a hundred months.

(Evid. Hrg Tr. p. 30, l. 14 - p. 31, l. 23).

Finally, the Court adopts specific language from the May 8, 2006 Memorandum and Order in this case:

> "For such a claim to succeed, however, Movant must show that he instructed his counsel to file an appeal. *See Holloway*, 960 F.2d at 1357. It is well established that, for an indigent defendant, the "right to be furnished counsel [for appeal] does not depend upon a request, but the desire to appeal must be manifest." *See, e.g.*, *Maness v. Swenson*, 385 F.2d 943, 945 (8th Cir. 1967) (quoting *Swenson v. Bosler*, 386 U.S. 258, 260 (1967)). "A bare assertion by the petitioner that []he made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." *Barger*, 204 F.3d at 1182; *see also Rodriguez v. United States*, 964 F.2d 840, 842 (8th Cir. 1992) (per curiam)."

(May 8, 2006 Memorandum and Order at p. 9). At most, Movant asked Mr. Shostak if Movant could appeal. There is no evidence that Movant instructed Mr. Shostak to file an appeal.

Additionally, the "Analysis" of the May 8, 2006 Memorandum and Order in this case thoroughly discusses the requirements Movant must satisfy under ***Strickland v. Washington***, 466 U.S. 668 (1984). Movant fails in his burden of proof to show either, (1) that Mr. Shostak's performance was deficient in that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment, or (2) that counsel's deficient performance prejudiced the defense. Movant fails to show that Mr. Shostak's representation fell below an objective standard of reasonableness. In the same way, Movant has failed to meet the ***Strickland*** prejudice prong. Movant fails to show that Mr. Shostak in any respect prejudiced his defense. There is no evidence that Movant instructed Mr. Shostak to file a Notice of Appeal or that Movant received ineffective assistance of counsel from Mr. Shostak in any way. Movant's remaining claim for ineffective assistance of counsel under Ground One will be dismissed.

Accordingly,

**IT IS HERBY ORDERED** that Movant, Mario Evans, is not entitled to any relief under 28 U.S.C. § 2255 for any of the reasons raised in Ground One of his Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, based on ineffectiveness of counsel for failure to file a Notice of Appeal, and Ground One is Dismissed.

**IT IS FURTHER ORDERED,** based on the Memorandum and Order of this Court on May 8, 2006, and this Memorandum and Order, that Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [doc. #1] is in all respects DISMISSED.

**IT IS FURTHER ORDERED** that the Court shall not issue a certificate of appealability as to Ground One. The Court has already ordered that no certificate of appealability issue as to all other Grounds.

So Ordered this 6th Day of December, 2006.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE